# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES INTERNATIONAL
UNION NATIONAL INDUSTRY PENSION FUND
11 Dupont Circle, N.W., Suite 900
Washington, DC 20036-1202

and

ANDREW STERN, RODERICK S. BASHIR,
CHARLIE RIDGELL, SHARLEEN STEWART,
JAMES BERG, EDWARD MANKO, JOHN J.
SHERIDAN, LARRY T. SMITH, DAVE
STILLWELL, AS TRUSTEES OF THE SERVICE
EMPLOYEES INTERNATIONAL UNION
NATIONAL INDUSTRY PENSION FUND
11 Dupont Circle, N.W., Suite 900
Washington, DC 20036-1202

                Plaintiffs,

v.

AAA WINDOW CLEANING CORPORATION
4626 Broadale Road
Cleveland, OH 44109

SERVE:
Henry Sybo
4626 Broadale Road
Cleveland, OH 44109

                Defendant.

C.A. No.

## COMPLAINT UNDER ERISA FOR WITHDRAWAL LIABILITY AND INTEREST

## INTRODUCTION, JURISDICTION AND VENUE

1.     This is a civil action brought by an employee benefit plan and the trustees of an employee benefit plan pursuant to Sections 502(a)(3), (d)(1), (g)(2), 515, 4219, 4221 and 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),    29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), 1145, 1399, 1401 and 1451, to collect withdrawal liability amounts owed, accrued interest, reasonable attorneys fees, and other legal or equitable relief.

2.     Jurisdiction is conferred upon this court by Sections 502(e), (f), 4221(b) and 4301(a), (c) of ERISA, 29 U.S.C. § 1132(e) and (f), 29 U.S.C. § 1401(b), 1451(a) and (c). Jurisdiction also lies under 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3.     Venue is proper under Section 502(e)(2) and Section 4301(d) of ERISA, 29 U.S.C. § 1132(e)(2), 1451(d), because the Plaintiff employee benefit plan is administered and located in Washington, D.C.

## PARTIES

4.     Plaintiff Service Employees International Union National Industry Pension Fund ("Pension Fund") is an employee pension benefit plan within the meaning of Section 3(2), (3) of ERISA, 29 U.S.C. § 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees of contributing employers.  The Pension Fund is and at all times material herein has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Plaintiff Pension Fund was established and exists pursuant to collective bargaining agreements between the local unions affiliated with

2

the Service Employees International Union ("SEIU") and various employers, including

Defendant AAA Window Cleaning Corporation. The Pension Fund is administered at 11

Dupont Circle, N.W., Suite 900, Washington, D.C. 20036. A true, correct and complete copy of

the Pension Fund Agreement and Declaration of Trust ("Pension Trust") is attached as Exhibit A

to this Complaint.

5.    The Pension Fund is governed by a Board of Trustees, half of whom are appointed

by the contributing employers and half by the SEIU.  The Board of Trustees is the sponsor and

administrator of the Pension Fund, within the meaning of Section 3(16)(A) and (B) of ERISA,

29 U.S.C. § 1002(16)(A) and (B).

6.    Plaintiff Trustees of the Pension Trust, Andrew Stern, Roderick S. Bashir, Charlie

Ridgell, Sharleen Stewart, James F. Berg, Edward Manko, John J. Sheridan, Larry T. Smith, and

David S. Stillwell (collectively the "Trustees") are the duly authorized Trustees of the Plaintiff

Pension Fund whose duty it is to administer the Plaintiff Pension Fund for the benefit of the

participants and beneficiaries of the Plaintiff Pension Fund. The Trustees are authorized and

empowered to maintain this action.  The Trustees are fiduciaries within the meaning of Sections

3(21)(A), 502(a)(3), (e)(1), (g)(2) and 4301(a) of ERISA, 29 U.S.C. §§ 1002(21)(A) and

1132(a)(3), (e)(1) and (g)(2).  They bring this action on behalf of the Pension Fund and the

participants and beneficiaries of the Pension Fund pursuant to ERISA Sections 4216 through

4219, 502(a)(3), (d)(1), (g)(2) and 515, 29 U.S.C. §§ 1396 through 1399, 1132(a)(3), (d)(1) and

(g)(2) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

7.    Defendant AAA Window Cleaning Corporation ("AAA Window Cleaning") is

registered as a corporation and operates under the laws of the State of Ohio.  Defendant's

corporate address is 4626 Broadale Road, Cleveland, Ohio, 44109.

8.      Defendant, at all relevant times, employed workers who were and are represented by the Service Employees International Union ("SEIU" or "Union") and who were participants in the Pension Fund.  The SEIU and Defendant were parties to a collective bargaining agreement that established the terms and conditions of employment for employees of the Defendant.  The most recent collective bargaining agreement between the Union and Defendant covered the period from May 1, 2003 to April 30, 2006 ("2003 Agreement").  A true, correct and complete copy of the 2003 agreement is attached as Exhibit A to this Complaint.

9.      At all times material to this Complaint, Defendant was an "employer" in an "industry affecting commerce" as defined by Sections 3(5), (9), (11), (12) and (14) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12) and (14), and an "employer whose activities affect commerce" within the meaning of Section 301(b) of the LMRA and Section 2(2), (6), and (7) of the LMRA, 29 U.S.C. § 185(b); 152(2), (6), and (7).

## FACTUAL BACKGROUND AND STATEMENT OF CLAIM

10.     Defendant, at all relevant times, employed workers represented by SEIU Local 47, and was obligated under Collective Bargaining Agreements to pay pension contributions to the Pension Fund on behalf of its covered employees.  See Exhibit A to this Complaint, Article XI, p. 13.

11.     The Pension Fund determined that as of March 14, 2006, there was a complete withdrawal by AAA Window Cleaning from the Pension Fund within the meaning of section 4203(a) of ERISA, 29 U.S.C. § 1383(a).  The complete withdrawal occurred because the Defendant permanently ceased to have an obligation to contribute under the Plan.  The Pension

Fund sent an initial notice of withdrawal on September 26, 2007 advising Defendant that it owed

withdrawal liability in the amount of $5,177.40.  Included with this notice was a payment

schedule for 7 monthly payments of $789.91 for six months, and $466.35 (plus amortized

interest) to begin in November 1, 2007.  A true, correct and complete copy of the September

2007 notice and demand with payment schedule is attached as Exhibit B to this Complaint.

12.     In accordance with section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A),

Defendant had ninety (90) days from receipt of the initial notice and demand to request a review

of the amount of the liability and/or the schedule for liability payments.

13.     Defendant did not timely request review pursuant to section 4219(b)(2)(A) of

ERISA, 29 U.S.C. § 1399(b)(2)(A).  Consequently, Defendant has lost the right to challenge the

withdrawal liability assessment under Section 4221(b)(1) of ERISA, 29 U.S.C. § 1401(b)(1).

14.     After Defendant failed to make its required payments, the Pension Fund sent

demand letters on October 5, 2007; October 25, 2007; November 29, 2007; January 9, 2008;

January 25, 2008; and February 21, 2008 demanding payment of the withdrawal liability in a

timely fashion.  To date, Defendant has failed to respond to these letters or make any payments.

15.     In accordance with section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), a party

is in default if it has not cured its failure to pay its withdrawal liability installment payments

within sixty days following a demand.  Defendant did not cure its failure to pay within the sixty

(60) day period and is in default.  As a result, Defendant is liable for the total unpaid balance of

the withdrawal liability in the amount of $5,177.40.

16.     Pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), Defendant is in

5

default and Plaintiffs are entitled to an award of the total unpaid balance of the withdrawal liability in the amount of $5,177.40, accrued interest on the unpaid amounts owed from the due date of the first owed payment not timely made, reasonable attorney's fees and costs, and other legal relief as deemed appropriate by the Court.  Defendant is also liable for liquidated damages in accordance with the Pension Plan Document and applicable federal law.

17.     Section 10.05(d)(2) of the Pension Plan of the SEIU National Industry Pension Fund provides that interest shall be charged on any amount in default (including accrued interest), from the date the payment was due to the date it is paid.  The interest will be equal to the prime rate plus 2% as published in the Wall Street Journal on the first business day of the calendar year in which the payment was due.  For each succeeding calendar year that any amount in default remains unpaid, interest will adjust to the then current prime rate plus 2% as published in the Wall Street Journal on the first business day of the applicable calendar year.

18.     Section 10.05(e) of the Pension Plan of the SEIU National Industry Pension Fund provides that in any suit by the Trustees to collect withdrawal liability, if judgment is awarded in favor of the Plan, the employer shall pay to the Plan, in addition to the unpaid liability and interest thereon as determined under subsection (d)(2), liquidated damages equal to the greater of (1) the amount of interest charged on the unpaid balance; or (2) 20% of the unpaid amount awarded.

### COUNT I

19.     Plaintiffs reallege and incorporate Paragraphs 1 through 18.

20.     This claim arises under Section 502(a)(3), (d)(1) and (g)(2), and Section 515 of

6

ERISA, 29 U.S.C. §§ 1132(a)(3), (d)(1) and (g)(2) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

21.     Defendant has failed to pay the amounts owed for withdrawal liability a period greater than sixty (60) days after notification of failure by the Plaintiff Fund.  As a result, the Defendant is in default under Section 4219 of ERISA.  29 U.S.C. § 1399(c)(5).

22.     Defendant has failed to make any payments of the required withdrawal liability monthly payments in accordance with the payment schedule as provided by the Pension Fund. The Defendant was assessed $5,177.40 in withdrawal liability.  Because Defendant failed to timely contest the assessment, Defendant is now barred from contesting the assessment.

23.     Defendant's failure to timely remit the withdrawal liability amounts owed makes Defendant liable for interest on all late payment amounts according to the Trust Agreement and Section 4219(c)(5) of ERISA.  Interest continues to accrue on these unpaid amounts until the date of payment.

24.     Defendant's failure to timely remit the withdrawal liability amounts owed makes Defendant liable for liquidated damages according to the terms of the Trust Agreement.

25.     Defendant has failed to comply with repeated notices and demands to remit outstanding withdrawal liability payment and interest.

**WHEREFORE**, Plaintiffs respectfully pray that the Court enter judgment on behalf of Plaintiffs against Defendant AAA Window Cleaning,  and:

1.     Declare that Defendant is in default in remitting its withdrawal liability to the Pension Fund;

7

2.     Enter judgment against Defendant for the withdrawal liability amounts owed to the Pension Fund in the amount of $5,177.40;

3.     Enter judgment against Defendant for interest on the unpaid withdrawal liability amounts owed to the Pension Fund, to be calculated upon judgment in accordance with the procedures laid out in the Pension Plan;

4.     Enter judgment against Defendant for liquidated damages on the unpaid withdrawal liability amounts owed to the Pension Fund the greater of the amount of interest charged on the unpaid balance or $1,035.48 (20% of the withdrawal liability amount);

5.     Require Defendant to reimburse Plaintiffs for all costs incurred in bringing this action, including reasonable attorney fees and court costs, pursuant to the Pension Plan and Sections 4301(b) and (e) of ERISA, 29 U.S.C. § 1451(b), (e);

6.     Enter an order that this Court will retain jurisdiction of this cause and of the parties hereto pending compliance with its orders, and;

7.     Award such other relief as the Court deems just and proper.

Respectfully submitted,

_____/s/_____

Richard C. Welch (DC Bar# 485756)
Eugene K. Ahn
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088
Counsel for Plaintiffs

May 8, 2008

# EXHIBIT A

47/452/1469

Full CBA in
47/716/1516

WORKING AGREEMENT

SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 47

AND

WINDOW CLEANING EMPLOYERS

TERM OF AGREEMENT:

MAY 1, 2003 TO APRIL 30, 2006

<u>I N D E X</u>

| <u>ARTICLE NO.</u> | <u>DESCRIPTION</u> | PAGE<br><u>NO.</u> |
|---|---|---|
| I. | RECOGNITION, UNION SHOP, CHECKOFF . . . . . . . . . . . . . | 1 |
| II. | WAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| III. | EMPLOYEE COMPETITION . . . . . . . . . . . . . . . . . . . . . . | 6 |
| IV. | BEREAVEMENT PAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| V. | HOLIDAYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| VI. | VACATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| VII. | SENIORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| VIII. | SAFETY REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| IX. | MISCELLANEOUS EMPLOYER AND<br>UNION RESPONSIBILITIES . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| X. | COMPLIANCE AND REGULATORY LAW . . . . . . . . . . . . . | 12 |
| XI. | PENSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| XII. | INSURANCE AND HOSPITALIZATION<br>AND WELFARE FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| XIII. | AUDITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| XIV. | GRIEVANCES AND ARBITRATION . . . . . . . . . . . . . . . . . | 15 |
| XV. | NO FAVOR CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| XVI. | DURATION OF AGREEMENT . . . . . . . . . . . . . . . . . . . . . . | 17 |

# A G R E E M E N T

This Agreement made and entered into this 1st day of May, 2003 by and between Window Cleaning Employers, hereinafter referred to as the "EMPLOYER," and **Service Employees International Union, Local 47**, affiliated with Service Employees International Union, AFL-CIO/CLC, hereinafter referred to as the "UNION."

## WITNESSETH:

WHEREAS, it is the desire of the said union and the Employer to enter into an agreement to establish a peaceful settlement and adjustment of all grievances which will tend to stabilize and strengthen the business of the Employer, and to establish wage rates and working conditions which will prevail between the parties hereto during the existence of this Agreement;

NOW, therefore, it is hereby mutually agreed:

## PURPOSE

The purpose of this Agreement is to protect the employees receiving the full contract rate or those employees who would receive said rate by virtue of the wage progression scale of Article II.

## ARTICLE I.
## RECOGNITION. UNION SHOP. CHECKOFF. COPE-PAC

### SECTION 1. RECOGNITION

A.    The Employer recognizes the Union as the exclusive bargaining agent for window cleaners employed by the Employer with respect to hours of work, wages, rates of pay and other conditions of employment.

B.    For all purposes in this Agreement, the "Industry" means all Employers who have employees covered by this Agreement and a contract with Service Employees International Union, Local 47 AFL-CIO/CLC, and the employees of the employer covered by this Agreement.

## SECTION 2.  UNION SHOP

It is further agreed and understood that all present employees who are or become members of the Union shall remain members in good standing or tender to the Union the initiation fees and periodic dues that are the obligations of members as a condition of their employment. All present employees who are not members of the Union and all employees who are hired hereafter on the 31st day following the beginning of their employment or the effective date of this Agreement, whichever is the latter, shall become and remain members in good standing or tender to the Union the initiation fees and periodic dues that are the obligations of members of the Union as a condition of their employment.

## SECTION 3.  CHECKOFF

A.    The employer agrees to deduct union membership dues from the wages of the employees covered by this Agreement upon receipt from an employee of a written authorization. The Employer will promptly remit such deductions to the Union at its current address, providing the Union notifies the Employer of the amounts to be deducted in each individual case.

B.    The Employer agrees to deduct the dues of his/her employees not later that the third pay day of each month and forward same to the office of the Union.

C.    The Employer will furnish the Union with a complete list of all employees covered by this Agreement employed by it during the month. The names of apprentices and part-time employees will be included on such list. The Employer will notify the Union when an employee is hired, discharged, laid-off or when an employee quits, at the time said union dues are forwarded to the Union.

## SECTION 4.  COPE-PAC

The Employer agrees to deduct S.E.I.U., Local 47 COPE-PAC contributions in whatever sum is authorized by the Union from the pay of employees upon receipt of a voluntary written authorization executed for that purpose, only so long as such deductions and contributions are in compliance with all substantive and procedural law in effect at that time.

-2-

# ARTICLE II.
## WAGES

### SECTION 1.

For the purpose of this Agreement the employees covered hereunder will be classified as follows:

a) Journeymen window washers

b) New Hire Apprentices - In order to become a journeyman, an apprentice must become certified in all categories of company certification as follows: proper usage in using basic tools such as ladders, poles, solutions, etc. and/or powered platform equipment, and/or rope repelling equipment. Apprentice employees are not permitted to perform any services without being under the supervision of a Journeyman.

c) Probationary employees - An employee shall be on probation for a period of 90 calendar days from his/her original date of hire. An employee discharged during his/her probationary period may not avail himself/ herself to the grievance procedure herein. The parties may mutually extend this probationary period.

d) Journeyman wage increases shall be as follows:

| Effective: | Date of Ratification | 5/1/04 | 5/1/05 |
|---|---|---|---|
| | $ .25 | $ .25 | $ .25 |

### SECTION 2.

Pay for all time worked, while engaged in company business, is to be computed from the time an employee leaves the office or shop of the Employer in those cases where it is necessary to start from the shop or office; otherwise time is to start from the employee's arrival on the job, as directed by the employer.

## SECTION 3.

The wage scale in effect during the term of this agreement and for apprentices shall be as follows:

| Date of Ratification | | 5/1/04 | 5/1/05 |
|---|---|---|---|
| Start | $ 9.00 | $ 9.50 | $10.00 |
| 3 Months | $10.00 | $10.50 | $11.00 |
| 6 Months | $11.00 | $11.50 | $12.00 |
| 9 Months | $12.00 | $12.50 | $13.00 |
| 1 Year | $13.00 | $13.50 | $14.00 |
| 15 Months | $13.65 | $13.90 | $14.15 |

The Employer shall employ four (4) Journeymen for every one (1) Apprentice.

## SECTION 4.

In the event the Employer requires more employees, the employer will call the Union, who will send out the most senior qualified window washer who was employed under a union agreement and is currently out of work as long as that individual has not been previously discharged by the Employer or was in direct competition with the Employer.

## SECTION 5.

Swing stage work, permanent stage work suspended by rope or cable and boatswain chair shall pay the regular rate the employee is entitled to plus one dollar ($1.00) per hour for the term of this Agreement.

## SECTION 6.

The Union will appoint a steward, currently employed by the employer, to serve the employees of the employer if the Employer has more than three employees in work covered by this Agreement.

### SECTION 7.

One and one-half (1 ½) times the regular hourly rate shall be paid for time actually worked in excess of forty (40) cumulative hours during the work week or eight (8) hours actually worked in any work day. Work on Saturday or Sunday shall be paid at one and one-half (1 ½) times the regular rate for each hour worked, provided that no current employee working an account previously receiving double time on Sunday is adversely affected by said change.

### SECTION 8.

On all work performed out of Cuyahoga County requiring overnight housing, the Employer will pay Fifteen Dollars ($15.00) per day for food and lodging expense. This shall be in addition to the regular pay for the work involved. The employee's time shall include time spent in traveling and after completion of the job shall include the time required in returning to the Employer's place of business or his/her home.

### SECTION 9.

In the event a contractor assigns work to an employee, the employee shall receive no less than the hours worked times the applicable hourly rate.

The Employee must present himself/herself for work every day in a physical and mental state that is conducive to performing his/her duties in a safe and productive manner.

### SECTION 10.

If an employee is not told at night not to report to work the next morning and he/she does report but then is not sent out, he/she shall receive two (2) hours pay for reporting. This does not apply, however, if the employee is not sent out due to inclement weather or if she/he is sent out and the weather does not permit him/her to do any work.

### SECTION 11.

If an employee is absent from work because of a bona fide sickness or accident the employee shall be returned promptly to the job he/she held prior thereto if physically able to do the work. An employee who is unable to report for work shall call prior to the starting time of his/her regular shift.

## SECTION 12.

The current practice of cleaning of light fixtures and wall washing shall remain "as is".

## SECTION 13.

New employees will not be put on belt and scaffold jobs to work unless or until they have received proper training and/or experience.

## SECTION 14.

Any lost/stolen equipment of the company due to an employees negligence will be the responsibility of the employee(s) involved.

## ARTICLE III.
## EMPLOYEE COMPETITION

An employee covered under this contract shall not compete with any contractor signatory to contract with the Union. In the event that such employee does undertake to contract for industrial or commercial accounts, or in the event he/she works for a non-union contractor in addition to the contractor herein, then the contractor herein shall not be obligated for payment of any pension or health and welfare premiums for said employee; providing, however, that the Union shall have a thirty (30) day period from the time it receives notice to cause said employee to cease competing with the contractors herein before non-payment of health and welfare or pension for said employee can be invoked. Further, any employee who goes into direct competition with the Employer shall forfeit any rights under Article II, Section 4(a).

## ARTICLE IV.
## BEREAVEMENT PAY

## SECTION 1.

An employee who is absent from work in order to attend the funeral of a legal spouse, legal father, legal mother, son, daughter, brother or sister will receive pay for time lost from scheduled work at his/her straight time hourly rate for a period not to exceed three (3) days, the last one of which shall be the day of the funeral at which the employee must be in attendance. The number of hours per day for which the employee shall be entitled to payment shall be equal to the number of hours per day for which he/she would otherwise have been scheduled to work, not to exceed eight (8) hours in any work day. The employee, upon request, shall be required to provide the Employer with proof of death, including the name of the officiating mortician.

## SECTION 2.

Should such funeral take place outside the state, requiring travel time in excess of three (3) days, the employee may have such additional travel time off without pay for the purpose of attending such funeral.

## ARTICLE V.
## HOLIDAYS

### SECTION 1.

The following nine (9) days of the year shall be considered holidays on which employees shall be granted eight (8) hours pay at their current straight time rate when not working:

| | |
|---|---|
| **New year's Day** | **Good Friday** |
| **Memorial Day** | **Independence Day** |
| **Labor Day** | **Thanksgiving day** |
| **Christmas Day** | **Employee's Birthday** |
| **One Floating Holiday** | |

An employee must have one year of service in the industry before becoming eligible for the birthday and an employee must have two years of service in the industry before becoming eligible for the one floating holiday. With respect to the Employee's Birthday and the Floating Holiday, it shall be the obligation of the employee to notify his/her Employer the week before that in which his/her birthday or floating holiday occurs. The Employer may regulate the number of employees off on a Personal Holiday. Any dispute arising out of the selection of a floating holiday shall be decided by seniority.

## SECTION 2.

If for any reason any of the aforementioned holidays should have to be worked, the employee shall receive two (2) times his/her regular rate of pay for each hour worked plus eight (8) hours of straight time earnings.

## SECTION 3.

An employee must also report for work the regularly scheduled working day before said holiday and also must report the regularly scheduled working day after the holiday, unless prior permission has been given from their Employer. An employee shall not receive payment for a holiday if she/he is currently receiving unemployment compensation or payment of lost time for illness.

## SECTION 4.

If any of the aforementioned holidays shall fall on Saturday or Sunday, the observance of the holiday will apply to the day observed in this community.

## ARTICLE VI.
## VACATIONS

## SECTION 1.

Any employee who shall have continuously been employed by the Employer or in this Industry for the time shown in the first column below shall be entitled to the working days of vacation shown in the second column and the vacation pay shown in the third column.

| Years of Service | Working days of Vacation | Hours of Vacation Pay |
|---|---|---|
| 1 | 5 | 40 |
| 2 | 10 | 80 |
| 5 | 15 | 120 |
| 15 | 20 | 160 |

Any employee who changes from one Employer to another in the Industry will earn only ten (10) working days of vacation and eighty (80) hours of vacation pay during his/her first year of employment with the new Employer. However, at the beginning of the second year of employment such employee will be treated for vacation purposes as if she/he has the full credit for the time he/she has worked in the industry and shall earn vacation days and vacation pay accordingly.

## SECTION 2.

Vacation pay shall be at the number of hours shown in the preceding paragraph times the straight time earnings at the rate being paid the employee at the time of receiving his/her vacation check, which shall be due and payable on the anniversary date of his/her employment.

## SECTION 3.

Employees shall be entitled to vacation pay of 1/12th the vacation pay due them for each full month of employment or major fraction thereof. Employment includes all time for which employees are compensated by the Employer, including but not limited to vacation time, sickness time, holidays and vacation time. If an employee leaves the Employer for any reason prior to his/her anniversary date, at the time he/she leaves he/she shall be paid all vacation pay he/she has earned and not yet taken.

## SECTION 4.

If agreeable between the employee and the employer and the   employee eligible for vacation signs a waiver, he/she will receive vacation pay in lieu of time off.

## SECTION 5.

If the employee wishes to take his/her vacation, he/she shall discuss, thirty (30) days before his/her vacation starts, with his/her Employer, the time of year this period shall be taken; and the Employer shall post on the bulletin board a list of names of his/her employees showing the period of vacation to be taken by each employee.

## ARTICLE VII.
## SENIORITY

## SECTION 1.

Seniority of the employees will be determined by the date the employee was first hired when he/she is continuously employed thereafter. It is further agreed that the employers will make assignments on the basis of good faith business reasons. Any employee absent from work for three or more days of scheduled work without notification shall be considered a voluntary termination.

## SECTION 2.

All benefits under this Agreement which are accorded employees because of length of service, including vacations, holidays, and wages shall accrue to employees in accord with their service in the Industry, even though this Agreement may be with a single Employer and refer to service with the Employer. An employee's anniversary date shall be the date he/she began working in the industry. Service in the Industry means work for any Employer who has employees covered by this Agreement and has a contract with the Union. Employees of that Employer shall receive full credit for their service from their original date with that Employer as service in the Industry. The Union, upon request, will provide documentation and certification on length of service in the Industry.

## SECTION 3.

Lay-offs shall be for lack of work and all such lay-offs will be in accordance with the employees' service in the Industry and their ability to perform the work available.

## ARTICLE VIII.
## SAFETY REQUIREMENTS

## SECTION 1.

The Union recognizes the IWCCI (International Window Cleaning Certification Institute) as a training program the Employer may require employees to participate in, so long as the Employer pays for all costs related to the program or an alternative program that instructs and encourages safety in the industry. Additionally, the Union recognizes the ANSI (American National Safety Institute) I-14 Window Cleaning Safety Standard, as it may apply to current Federal OSHA regulations.

The Employer may, at their own discretion, engage in equal recognition and participate in the IWCCI program and the work practices of the ANSI I-14 standard or an alternative program which instructs and encourages safety in the industry.

## SECTION 2.

Employees working with acid shall be provided with acid rubber gloves, boots, glasses, and rubber coveralls. Employees shall not work with acid without using the proper equipment.

### SECTION 3.

Employees shall not cross from window to window but must go inside from each window and outside of the next window.

### SECTION 4.

An employee who is injured on the job must report it to his/her foreman or supervisor on the same day, or as soon as reasonably possible, in a written format.

### SECTION 5.

The Employer will comply with all Municipal, State and Federal safety regulations.

### SECTION 6.

Compliance with the safety requirements set forth in this Article shall be the responsibility of the employee provided, however, that the employee's insistence of the application of these safety requirements shall not be grounds for his/her discharge.

### SECTION 7.

The Employer will provide a safety program and written safety manual, the employee will comply with. Further, the employee will comply with all safety rules, laws and regulations.

## ARTICLE IX.
## MISCELLANEOUS EMPLOYER AND
## UNION RESPONSIBILITIES

### SECTION 1.

The employees shall not engage in independent contracting from their employers for services of the kind covered by this Agreement. Such contracting shall be grounds for discharge.

### SECTION 2.

The Business Agent of the Union shall have access to all jobs at reasonable times, but shall so conduct himself/herself as not to interfere with the work of the employees.

-11-

### SECTION 3.

Whenever an Employer requires employees in the classification covered by this Agreement, he/she shall contact the office of the Union, either in writing or by telephone, stating the type of work to be performed and the expected duration of the work. If the Union knows of any persons who are qualified and available to perform that work, they shall be referred to the Employer. Employees shall be referred by the Union in accord with their service in the Industry, and the Employer shall hire only qualified employees in accord with their seniority. If the Union office is unable to refer a sufficient number of employees, then the Employer may hire employees from any other source. All provisions of Article II, Section 4, shall be complied with in following this procedure.

Competent applicants who have informed the Union that they are available for employment shall be referred in accord with seniority as stated herein, but referrals shall not be used on, or in any way affected by, Union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect or obligations of the Union membership, policies or requirements.

### SECTION 4.

Neither the Employer nor the Union shall discriminate against an employee because of race, color, national origin, gender, handicap or age as required by law.

## ARTICLE X.
## COMPLIANCE AND REGULATORY LAW

### SECTION 1.

In the event that any provision of this Agreement shall at any time be declared invalid by any court of competent jurisdiction, or become invalid by virtue of any state or federal law, rule or regulation, such event shall not invalidate the entire agreement, it being the express intention of the parties hereto that all other provisions not so invalidated shall remain in full force and effect.

## SECTION 2.

The Employer and employee, if so notified, will comply with the Worker's Compensation Laws of the State of Ohio and will maintain and continue its premium payments to the State Insurance Fund. The Employer further agrees that it will make a proper contribution to the State of Ohio, Bureau of Employment Services to provide unemployment compensation benefits.

The Employer will provide a Safety Program and written Safety Manual. The employee will comply with safety rules, laws and regulations.

All employees will protect to the best of their ability all co-workers' well being. Further, they will use with caution and protect the Employer's assets.

## SECTION 3.

The Employer and employee, if so notified, will comply with all City Ordinances and State and Federal Laws and Regulations pertaining to the use of and requirements of safety devices in connection with the work of its employees. It is recognized that employees have the right to refuse to work on any job not properly safeguarded, and where conditions of work are hazardous or dangerous, such refusal by employees does not constitute a violation of this Agreement.

## ARTICLE XI.
## PENSION

### SECTION 1.

Effective 5/1/03, the Employer will contribute $1.25 per hour, for each hour compensated up to forty (40) hours per week to the Service Employees International Pension Fund. Effective 5/1/04 this amount shall be increased to $1.30, effective 5/1/05 this amount shall be increased to $1.35 per hour compensated up to forty (40) hours per week.

### SECTION 2.

All premium time hours shall be paid at the same rate as straight time hours. These payments shall begin with the first day of an employee's employment by a new Employer, except that any employee who is newly employed in the Industry shall not have any payments made to the Pension Fund on his/her behalf until he/she has completed thirteen (13) weeks of work in the Industry.

# ARTICLE XII.
## INSURANCE AND HOSPITALIZATION
### AND WELFARE FUND

### SECTION 1.

The Employer shall pay 80% of the monthly premium cost toward the medical plan through Kaiser Permanente for single and family coverage. The employee shall pay the remaining 20%. This will be in effect for the term of this Agreement. Life Insurance, AD&D, lost time and vision benefits shall continue to be fully paid by the Employer. If at any time during the term of this Agreement, the Union and the Employer can find substantially comparable medical coverage at a lesser cost which is acceptable to the employees, the parties shall meet to discuss any change in medical coverage.

### SECTION 2.

Payments hereunder shall be made not later than the 23rd day of the preceding month so that all steady employees shall always be covered by these payments. Payments for employees who begin work between payment dates shall be made for two months on the first date of payment on which they are employed, except that employees who are newly employed in the industry shall not have any payments made on their behalf until they have completed thirteen (13) weeks work in the industry.

### SECTION 3.

In the event of illness or injury, the Employer will continue to make contributions provided for herein for three (3) months following the month in which the illness began or the employee was injured.

### SECTION 4.

There shall be no obligation on the part of the Employer to make any contribution to the Window Cleaners' Welfare Fund on behalf of an employee who is injured while in the employ of another Employer.

## SECTION 5.

In the event an employee suffers an occupational illness or an occupational injury, the employer will continue to make such contributions to the Welfare Fund during the employee's period of unemployment according to the following schedule:

a)   For an employee with less than five (5) years seniority with the Employer - six (6) months from date of such illness or injury.

b)   For an employee with five (5) years seniority or over with the Employer- twelve (12) months from date of such illness or injury.

## ARTICLE XIII.
## AUDITS

Upon the request of the Union, the Employer will make available for audit all records and journals pertaining to hours employees work so that Employer contributions to Welfare and Pension Funds (Local 47-48) S.E.I.U. might be verified through separate audit undertaken by the Trustees of said Funds.

## ARTICLE XIV.
## GRIEVANCES AND ARBITRATION

## SECTION 1.

Should differences arise between the Employer and the Union as to the meaning of or application of provisions of this Agreement, such grievances shall be settled in the following manner and order:

a)   Between the employee and the immediate supervisor, if a satisfactory settlement is not reached in this manner within one (1) working day, then the grievance is reduced to writing; and then -

b)   Between the Business Agent and a designated representative of the Employer.  If a satisfactory settlement is not obtained in this manner within seven (7) days; then -

-15-

c)    The matter will then be submitted to the Executive Board of the Union at its next regular meeting and if it is the decision of the Executive Board to submit the matter to arbitration, such matter will then be submitted.

If not submitted within sixty (60) days of the Employer's answer in Step b), such grievances shall be considered as having been settled in accordance with such answer. The Executive Board of the Union may on its own motion refuse to continue processing of the grievance and this may include the denial of arbitration. The Union shall have the right to take a matter to arbitration on its own initiative without the consent of the employee if it is approved by the Union's Executive Board.

## SECTION 2.

It is understood that should an Employer take over a union account, which has been a union shop account of another Employer, the required number of journeymen, as prescribed herein, will be increased by an appropriate number of journeymen to account for any loss of journeymen sustained by the Employer that previously had the account. Should a dispute arise as to which Employer is responsible for the retention of a journeyman, said dispute shall be handled through the grievance procedure.

## SECTION 3.

The choice of an arbitrator shall be determined jointly by the Employer and the Union; and where such choice cannot be determined, the arbitrator shall be appointed, on the application of either party, by the Federal Mediation and Conciliation Service according to its procedure. It is agreed by the Union and the Employer that the individual fees and expenses of the arbitrator will be paid equally by both the Union and the Employer.

## SECTION 4.

The decision of the arbitrator shall be final and binding upon the Employer and the Union. The arbitration procedure shall not be used to change or modify this Agreement.

## SECTION 5.

Inasmuch as this Agreement provides for fair and equitable means of disposing of grievances, the employees and the Union, both individually and collectively, agree that except as provided herein there shall be no strikes, slowdown, or interference with production during the life of this Agreement and the Employer agrees it will not lock out the employees during the life of this Agreement.

## SECTION 6.

Employees may be discharged or otherwise disciplined only for just cause.

## ARTICLE XV.
## NO FAVOR CLAUSE

The Employer shall not enter into any contract with any employee in conflict with this Agreement. In the event the Union enters into a more favorable contract with any other Employer who employs window cleaners and whose primary business is to contract and to provide window cleaning services to others, the Employer shall immediately be entitled to avail itself of such more favorable provisions and such action by the Employer shall not be construed as an infraction of this Agreement; provided, however, that the Union is not precluded from entering into a collective bargaining agreement with any other Employer.

## ARTICLE XVI.
## DURATION OF AGREEMENT

This Agreement shall become effective as of May 1, 2003 and shall continue in effect until midnight, April 30, 2006, and from year to year thereafter unless either party desires to modify or terminate the Agreement and notifies the other party, in writing, of its desire to modify or terminate at least sixty (60) days prior to April 30, 2006 of any subsequent year.

Employer:                                    Service Employees International Union,
                                             Local 47

_AAA Window Cleaning Corp_                   _[signature]_

_[signature]_                                _Dennis M Ringow_

Date:                                        Date:

_8/19/03_                                     _8-13-03_

## LETTER OF UNDERSTANDING

The Union and the Employer mutually agree that safety violations may be imposed upon employees found in violation and such enforcement shall be with just or proper cause.

Safety violations shall be categorized and defined as:

**Non-Serious**: An act of disregard or incompetence that reasonably subjects any person at risk to damage.

**Serious**: An act of disregard or incompetence that reasonably subjects any person at risk to injury or death.

Safety program documents must exist and employees must sign-off that they have received written safety information prior to any offense that may subject the employee to any disciplinary action by the Employer.

Progressive discipline may be enforced by the Employer in that any serious safety violations are subject to review not to exceed 180 days for prior offenses. Corrective remedies that may be administered in considering the severity of disciplinary measures based upon prior offense shall be as follows:

Any employee guilty of a serious infraction, 1st offense, shall be subject at a minimum to a three (3) day suspension without pay not to exceed seven (7) days without pay at a maximum, depending on the severity of the incident.

Any employee guilty of a serious infraction with any prior non-serious incident shall be subject at a minimum to a seven (7) day suspension without pay not to exceed 10 days without pay at a maximum, depending on the severity of the incident.

Any employee guilty of a serious infraction, 2nd offense, shall be subject at a minimum to a 15-day suspension or termination depending on the severity of the incident.

Any employee guilty of a serious safety infraction, 3rd offense, shall be terminated without option for reinstatement.

# EXHIBIT B



**SEIU**

National Industry Pension Fund

11 Dupont Circle, N.W. • Ste. 900
Washington, D.C. 20036-1202
202-730-7500 • 800-458-1010 (Toll Free)

September 26, 2007

**BY CERTIFIED MAIL**

Mr. Henry Sybo
AAA Window Cleaning
P.O. Box 347089
Cleveland, OH  44134-7089

RE:  COMPLETE WITHDRAWAL LIABILITY
     AAA Window Cleaning

Dear Mr. Sybo:

This is a notice and demand for payment of withdrawal liability owed to the SEIU National Industry Pension Fund ("NIPF") by AAA Window Cleaning, pursuant to Section 4219 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. Section 1399, and the NIPF Plan document.

NIPF records indicate that AAA Window Cleaning incurred a complete withdrawal from the Plan as of March 14, 2006, because it permanently ceased to have an obligation to contribute under the Plan, or permanently ceased all covered operations under the Plan. This notice and demand for payment of withdrawal liability applies equally to all members of any controlled group of trades or businesses, as defined in Section 414(c) of the Internal Revenue Code, of which the above named business is a member.

The Multiemployer Pension Plan Amendments Act of 1980 requires the Trustees of NIPF to assess and collect each withdrawing employer's withdrawal liability. Withdrawal liability is determined based on NIPF's unfunded vested liability (i.e., vested benefits not covered by assets).

NIPF has calculated the gross withdrawal liability of AAA Window Cleaning to be $55,177.40. Under the Plan's de minimis provision, this constitutes a net withdrawal liability of $5,177.40. This withdrawal liability has been calculated based on NIPF information applicable to employer withdrawals occurring in 2006, and is based on the Plan's unfunded vested liability as of December 31, 2005. The withdrawal liability calculation worksheet is attached.

**REGIONAL OFFICE**
Suite #302
642 Harrison Street
San Francisco, CA. 94107-1351
415/905-8484

At your option, the withdrawal liability may be amortized and paid in monthly installments according to the attached minimum required payment schedule, or such liability may be paid in a lump sum. If you choose the monthly installment option, amortization charges will accrue on the outstanding balance at the annual rates indicated on the attached minimum payment schedule.

Please mail your check made payable to SEIU National Industry Pension Fund and send it by November 1, 2007 to:

        Sarah Wilkerson, Financial Manager
        SEIU National Industry Pension Fund
        11 Dupont Circle, N.W., Ste 900
        Washington, D.C.  20036

Subject to applicable law, an employer shall be in default if it fails to make, when due, any monthly payment, if the failure is not cured by the payment of delinquencies plus required additional interest within 60 days after the employer receives written notification from NIPF of such failure. In the event of a default, NIPF may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.

If you have any questions with regard to this matter, please direct them in writing to my attention. Inquiries or requests for information do not stay your payment obligations.

        Sincerely,

        Lori Wood, Deputy Director
        SEIU Benefit Funds


Attachments

Cc:  Betsy Blount
     Eunice Washington
     Sarah Wilkerson
     Robert Seltzer

**SEIU National Industry Pension Fund**
**Withdrawal Liability**
**AAA Window Cleaning - FINAL**

Withdrawal date                          03/14/06
Initial payment due                      11/01/07

Assessment
Principal                                5,177.40
Interest                                    28.41
Total WL                                 5,205.81

| Date Due | Month | Date Paid | Check no. | Amt. Due | Amt. Paid | Principal | Interest | Remaining Balance |
|----------|-------|-----------|-----------|----------|-----------|-----------|----------|-------------------|
|          |       |           |           |          |           |           |          | 5,177.40 |
| 11/01/07 | 1.00  |           |           | 789.91   |           | 789.91    | -        | 4,387.49 |
| 12/01/07 | 2.00  |           |           | 789.91   |           | 781.36    | 8.55     | 3,606.13 |
| 01/01/08 | 3.00  |           |           | 789.91   |           | 782.88    | 7.03     | 2,823.25 |
| 02/01/08 | 4.00  |           |           | 789.91   |           | 784.41    | 5.50     | 2,038.84 |
| 03/01/08 | 5.00  |           |           | 789.91   |           | 785.93    | 3.98     | 1,252.91 |
| 04/01/08 | 6.00  |           |           | 789.91   |           | 787.47    | 2.44     | 465.44   |
| 05/01/08 | 7.00  |           |           | 466.35   |           | 465.44    | 0.91     | -        |
|          |       |           |           | 5,205.81 | -         | 5,177.40  | 28.41    |          |

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

Service Employees International Union National Industry Pension Fund, et al.

AAA Window Cleaning Corporation

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)            DC

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)            Cuyahoga
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard C. Welch
Mooney, Green, Baker & Saindon, P.C.
1920 L St. NW, Suite 400
Washington, DC 20036

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ⊙ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge C** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judg from Mag. J

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
ERISA 502a3, d1, g2, 515, 4219, 4221, and 4301 to collect withdrawal liability amounts, interest, attorneys' fees and other relief.

**VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ 5,177.48 JURY DEMAND: | Check YES only if demanded in c YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 5/8/2008   SIGNATURE OF ATTORNEY OF RECORD _____

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk o Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Se II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found und the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Cler Office

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.